IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MUSTAFA A. WHITFIELD,            :
                                :
            Plaintiff,          :
                                :
      v.                        :        C.A. No. 06-541 GMS
                                :
WILMINGTON POLICE DEPARTMENT,   :
                                :
            Defendant.          :


DEFENDANT WILMINGTON POLICE DEPARTMENT'S OPENING BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT




Andrea J. Faraone, Esquire (I.D. #3831)
Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302)576-2175
Attorney for Defendant


Dated:  January 8, 2007

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF THE PROCEEDINGS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    PLAINTIFF'S CLAIMS FOR FALSE ARREST, FALSE IMPRISONMENT AND
       ABUSE OF PROCESS ARE BARRED BY THE APPLICABLE STATUTE OF
       LIMITATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.   PLAINTIFF DOES NOT AND CANNOT ALLEGE ALL OF THE ELEMENTS OF A
       VALID § 1983 CLAIM FOR MALICIOUS PROSECUTION . . . . . . . . . . . . . . . . . . 12

IV.    THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT
       ESTABLISH THE DEPRIVATION OF ANY CONSTITUTIONAL RIGHT  . . . . . . . . 13

V.     PLAINTIFF'S CLAIMS ARE BARRED BY *HECK V. HUMPHREY* BECAUSE
       SUCCESS ON THOSE CLAIMS WOULD IMPLY THE INVALIDITY OF
       PLAINTIFF'S CONVICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE BARRED
       BY COLLATERAL ESTOPPEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VII.   THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
       GRANTED BECAUSE DEFENDANT WPD IS NOT A SEPARATE JURIDICAL
       ENTITY FROM THE CITY OF WILMINGTON AND IS, THEREFORE, NOT
       SUBJECT TO SUIT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

VIII.  THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF LACKS
       STANDING TO OBTAIN INJUNCTIVE RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . 35

IX.    PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS
       TO ALLEGE THE TYPE OF CONDUCT REQUIRED TO HOLD A MUNICIPALITY
       LIABLE UNDER § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

X.      THE COMPLAINT FAILS TO STATE A VALID CLAIM FOR ABUSE OF
        PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## TABLE OF CITATIONS

## <u>CASES</u>

*Adkins v. Rumsfeld*, 450 F.Supp.2d 440 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Allen v. McCurry*, 449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564(3d Cir. 1986) . . . . . . . . . 9

*Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721(8th Cir. 2001) . . . . . . . . . . . 37

*Backof v. New Jersey State Police*, 2004 U.S. App. LEXIS 2418 (3d Cir.) . . . . . . . . . . . . . 11, 12

*Big Apple BMW, Inc., et.al v. BMW of North America, Inc.*, 974 F.2d 1358 (3d Cir. 1992) . . . . . 9

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Brawley v. State*, 1999 Del. LEXIS 379 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Brodeur v. City of New York*, 2002 U.S. Dist. LEXIS 4500 (S.D. N.Y.) . . . . . . . . . . . . . . . . . . 9

*Brown v. Fauver*, 819 F.2d 395 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Brown v. Head*, 228 F.Supp.2d 1324 (M.D. Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Brown v. Pfaff*, 2004 U.S. Dist. LEXIS 3944 (D. Del. Mar. 3, 2004) . . . . . . . . . . . . . . . . . . 33, 34

*Brown v. State*, 721 A.2d 1263 (Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543 (D. N.J. 2000) . . . . . . . 34

*Carrigan v. State*, 957 F. Supp. 1376 (D. Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert denied*, 484 U.S. 1066 (1988) . . . . . . . . . . 9

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Coons v. Casabella*, 284 F.3d 437 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Crawford v. Pennsylvania*, 2003 U.S. Dist. LEXIS 16358 (M.D. Pa. Sept. 12, 2003) . . . . . . . . 32

*Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 30

*Davis v. Wilmington Police Force at Wilmington City Hall*, C.A. No. 88-72-LON,
 Magistrate Robinson (Report and Recomm. Dec. 21, 1988, Adopted Jan. 18, 1989) . . . 32

*Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Estelle v. Gamble*, 429 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gaines v. Univ. of Pennsylvania Police Dep't*,
 1997 U.S. Dist. LEXIS 15460 (E.D. Pa. Oct. 6, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Garcia v. County of Bucks*, 155 F.Supp.2d 259 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . 37

*Gibson v. Superintendent of New Jersey Dep't of Law and Pub. Safety Div. of State Police*,
 411 F.3d 427 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

*Greene v. Philadelphia*, 1998 U.S. Dist. LEXIS 6594 (E.D. Pa. May 8, 1998) . . . . . . . . . . . . 20

*Heck v. Humphrey*, 512 U.S. 477 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 21, 22, 23, 26

*Heine v. Rice*, 2001 U.S. Dist. LEXIS 9840 (M.D. Fla. Apr. 9, 2001) . . . . . . . . . . . . . . . . . . 8, 9

*Jamison v. Wilmington Police Dep't*,
 2004 U.S. Dist. LEXIS 22004 (D. Del. Oct. 12, 2004) . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Jones v. City of Philadelphia*, 491 F.Supp. 284 (E.D. Pa. 1980) . . . . . . . . . . . . . . . . . . . . . . . 37

*Kingsland v. Miami*, 382 F.3d 1220 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Knight v. Borough of Penns Grove*, 2002 U.S. App. LEXIS 2260 (3d Cir. 2002) . . . . . . . . . . 14

*La Plant v. Frazier*, 564 F.Supp. 1095 (E.D. Pa. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Lamb-Bowman v. Delaware State Univ.*, 152 F.Supp.2d 553 (D. Del. 2001) . . . . . . . . . . . . . . 10

*Looney v. City of Wilmington*, 723 F.Supp. 1025 (D. Del. 1989) . . . . . . . . . . . . . . . . . 26, 27, 28

*Marable v. West Pottsgrove Township*,
 2006 U.S. App. LEXIS 9925 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22, 37, 38

*Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . 9

*McDowell v. Delaware State Police*, 88 F.3d 188 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 10

*McMillen v. Nunley*, 2003 U.S. Dist. LEXIS 16959 (N.D. Tex. 2003) . . . . . . . . . . . . . . . . . . 23

*Meehan v. Town of Plymouth*, 167 F.3d 86 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Meyers v. Wokiewicz*, 2001 U.S. Dist. LEXIS 20448 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . 14

*Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . 36

*Montgomery v. De Simone*, 159 F.3d 120 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 11, 22, 37

*O'Shea v. Littleton*, 414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Owens v. Okure*, 488 U.S. 235(1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Padilla v. Township of Cherry Hill*,
        2004 U.S. App. LEXIS 20763 (3rd Cir. Oct. 5, 2004) . . . . . . . . . . . . . . . . . . . . 32, 33, 34

*Paredes v. City of Odessa*, 128 F. Supp. 2d 1009 (W.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . 30

*PBA Local No. 38  v. The Woodbridge Police Dep't*, 832 F. Supp. 808 (D. N.J. 1993) . . . . . . . 33

*Powell v. Ridge*, 189 F.3d 387 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Quintana v. Gates*, 2004 U.S. Dist. LEXIS 14886 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . 23

*Reed v. Hartford Police Dep't*, 2004 U.S. Dist. LEXIS 6237 (D. Conn. Apr. 6, 2004) . . . . . . 34

*Riley v. Taylor*, 2006 U.S. Dist. LEXIS 78450 (D. Del.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rogers v. Powell*, 120 F.3d 446 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Russoli v. Salisbury Twp.*, 126 F.Supp.2d 821 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Scott v. Parr*, 2005 U.S. Dist. LEXIS 4937 (W.D. Va. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sherwood v. Mulvihill*, 113 F.3d 396 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 38 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031 (3d Cir. 1988) . . . . . . . . . . . . . . . . . 38

*Smith v. Ostrum*, 2000 U.S. Dist. LEXIS 10115 (D. Del.) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Smithart v. Towery*, 79 F.3d 951(9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Smith-Berch, Inc. v. Baltimore County*, 68 F.Supp. 2d 602 (D. Md. 1999) . . . . . . . . . . . . . . . 33

*Stevenson v. Taylor*, 2005 U.S. Dist. LEXIS 11239 (D. Del. Apr. 28, 2005) . . . . . . . . . . . . . 14

*Tawes v. Frankford Volunteer Fire Co.*, 2005 U.S. Dist. LEXIS 786 (D. Del.) . . . . . . . . . . . . . 9

*Thomas v. City of Philadelphia*, 2002 U.S. Dist. LEXIS 12264(E.D. Pa. Feb. 7, 2002) . . . . . . 32

*Thomas v. Wilmington Police Dep't*, 1994 Del. Super. LEXIS 266( Del. Super. Ct. 1994)   31, 32

*Washington v. Wilmington Police Dep't*, 1995 Del. Super. LEXIS 472(Del. Super. 1995) . . . 32

*Wayne v. West Chester*, 891 F.2d 458 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wilson v. Russo*, 212 F.3d 781(3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Yattoni v. Oakbrook Terrace*, 801 F.Supp. 140 (N.D. Ill. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir. 1989) . . . . . . . . . . . . . . . . . 32

## **STATUTES**

10 *Del. C.* § 8119 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 *U.S.C.* § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 *U.S.C* § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 *U.S.C* § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

1 *Wilm.C.* § 3-100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

18 *Pa. C.S.A.* § 5104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*N.J.S.A.* 40A:14-118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## **RULES**

*Fed.R.Civ.P.* 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 39

*Fed.R.Civ.P* 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fed. R. Civ. P.* 17(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Fed. R. Civ. P.* 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 39

*Fed. R. Civ. P.* 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fed. R. Civ. P.* 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Delaware Super. Ct. Crim. R.* 61(i)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## **SECONDARY AUTHORITIES**

*Restatement (Second) of Judgments* § 28(1) comment a (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Restatement (Second) of Torts* § 682 cmt. b (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

3 Eugene McQuillan, *The Law of Municipal Corporations* §12.40 (1990) . . . . . . . . . . . . . . . . 31

## NATURE AND STAGE OF THE PROCEEDINGS

On February 10, 2003, Plaintiff Mustafa Whitfield, Emmanuel Robinson and Akeem Coleman were jointly indicted on the following charges: (I) Attempted Robbery in the First Degree; (II) Possession of a Firearm During the Commission of a Felony; (III) Assault in the Second Degree; (IV) Possession of a Firearm During the Commission of a Felony; (V) Reckless Endangering in the First Degree; (VI) Possession of a Firearm During the Commission of a Felony; (VII) Wearing a Disguise During the Commission of a Felony; (VIII) Conspiracy in the Second Degree; and (IX) Possession of a Deadly Weapon by a Person Prohibited. *See* Defendant's Opening Brief Appendix at 79 (hereinafter "A-___"); A-16. Following a joint trial by jury which took place from January 29 through February 6, 2004, all of the defendants were convicted on all of the charges except for Counts II and IX. A-21-22; A-79.

At the close of the prosecution's case, Whitfield made an oral and written motion for judgment of acquittal. A-80. He also subsequently filed a motion for a new trial. A-81. The Superior Court denied both of those motions. A-23; A-81; A-85; A-87. Whitfield then filed a direct appeal challenging his conviction, as well as the Superior Court's denial of his motions for acquittal and for a new trial. A-78-80. Whitfield was represented by an attorney, Joseph M. Bernstein, in that direct appeal. A-78. In a decision dated December 29, 2004, the Delaware Supreme Court denied Whitfield's appeal and affirmed the judgments of the Delaware Superior Court. A-80; A-95.

Whitfield then filed a state petition for a writ of habeas corpus and a motion for post-conviction relief, both of which were denied by the Delaware Superior Court. A-34-44; A-50-52; A-66-70. In his state petition for a writ of habeas corpus, Whitfield alleged violations of his Fourth Amendment rights. A-37; A-40-44. Specifically, Whitfield alleged that he was charged with a crime

because the warrant affidavit prepared by Detective Stephen Misetic falsely stated that Wilmington police had positively identified Whitfield as one of the suspects. A-37; A-41-43. Whitfield asserted that, because Wilmington police officers never positively identified him as a suspect, there was no probable cause to arrest him or charge him with a crime. A-43. Plaintiff's motion for post-conviction relief raised two claims entitled: (1) "Illegal Arrest and Detention", and (2) "Search and Seizure in Violation of the Fourth Amendment." A-68. The claim for Illegal Arrest and Detention asserted that Plaintiff's arrest was illegal due to "identification issues" because the police and the victim were supposedly unable to sufficiently identify Plaintiff as one of the perpetrators at trial. *See id.* The claim for Search and Seizure in Violation of the Fourth Amendment alleged that Plaintiff was seized by police without probable cause and without any type of reliable identification or other evidence linking him to the crime. *Id.* In a December 13, 2005 opinion, the Delaware Supreme Court affirmed the Superior Court's denial of Plaintiff's applications for post-conviction relief. A-96-98.

Subsequently, on March 1, 2006, Plaintiff filed a federal petition for a writ of habeas corpus with this Court. A-99; A-102-118. In that petition, Plaintiff claimed that he was arrested and charged with robbery and other crimes because Detective Misetic allegedly made misrepresentations in the warrant affidavit to establish probable cause. A-106-107. More particularly, Plaintiff asserted that Misetic falsely stated in the warrant affidavit that police officers had positively identified Plaintiff as one of the suspects and that the victim's description of the suspects included in the warrant affidavit did not "agree" with the "real" statement of the victim that was on tape. *Id.* This Court has not yet issued a decision with respect to Plaintiff's federal habeas corpus petition. A-99-101.

2

## SUMMARY OF ARGUMENT

_____1.     Plaintiff's § 1983 claims for false arrest, false imprisonment and abuse of process are barred by the applicable two-year statute of limitations because Plaintiff's arrest and criminal trial occurred more than two years ago.

_____2.     Plaintiff cannot establish all of the essential elements of a § 1983 claim for malicious prosecution because he cannot demonstrate the termination or reversal of the criminal proceedings by reason of his innocence.

_____3.     Plaintiff cannot demonstrate any knowing, deliberate or reckless misrepresentations or omissions that created a falsehood in applying for the warrant.   Nor can he show that the alleged misrepresentations and omissions in the warrant affidavit were material to the finding of probable cause.  Therefore, Plaintiff cannot establish any constitutional violation.  Because Plaintiff cannot demonstrate that he was deprived of any constitutional right, he cannot establish an essential element of his § 1983 claims, and Detective Misetic is entitled to qualified immunity.

_____4.     Plaintiff's claims are barred by the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), because success on those claims would imply the invalidity of Plaintiff's criminal conviction, which has not been overturned.

5.     Plaintiff's §1983 claims are barred by collateral estoppel because the same federal constitutional issues were raised or should have been raised in the prior state criminal proceedings, and those issues were, in fact, decided by the Delaware Superior and Supreme Courts.

6.     The Wilmington Police Department – the only defendant remaining in this action – is not a separate juridical entity from the City of Wilmington and is, therefore, not subject to suit.

_____7.     Plaintiff lacks standing to obtain injunctive relief because the Complaint alleges only

3

past exposure to allegedly illegal conduct.

8.     The Complaint fails to allege the type of conduct required to hold a municipality liable under § 1983 because the claims against WPD appear to be based solely on a theory of *respondeat superior*.  To the extent the Complaint can be read to allege WPD's failure to investigate Plaintiff's allegations and to discipline Detective Misetic, it likewise fails to state a valid § 1983 claim because it alleges neither deliberate indifference on the part of WPD nor any facts from which deliberate indifference can be inferred.

9.     The Complaint fails to state a valid claim for abuse of process because it does not allege, nor is there any evidence, that in preparing the warrant affidavit, Detective Misetic sought any object beyond Plaintiff's arrest and criminal conviction.

## STATEMENT OF FACTS

_____On February 6, 2004, following a jury trial, Plaintiff was convicted on multiple criminal charges in connection with a shooting and robbery that occurred on October 14, 2002.  A-79; A-22.  The victim arrived home at approximately 11:30 p.m. on October 14, 2002, and parked his vehicle behind his house.  A-81.  While he was parking the car, he noticed three black males walking around the corner heading towards him.  A-81-82.  Two of the men had something covering their faces.  A-82.  The three men came around the front of the victim's car as he was getting out of it.  *Id*.  One of the men – the one without anything covering his face – was holding a black semiautomatic handgun, and told the victim to "give up the keys."  *Id*.  The victim then began arguing, and the gunman told one of the other men to grab the keys, which the victim was holding in his hand.  *Id*. As the man grabbed for the keys, the victim wrapped his arm around the man's neck and a struggle ensued.  *Id*. The victim tripped, and the two of them fell back on the curb.  *Id*.  The third assailant tried to pull

4

his companion off of the victim while telling the gunman to shoot. *Id*. The gunman fired toward the victim, and the three suspects took off running. *Id*. The victim began to chase his assailants. *Id*. As they were running down the street, the gunman turned and fired at the victim again. *Id*. The victim immediately felt pain in his foot and gave up the chase. *Id*. The victim was subsequently treated at the hospital for a gunshot wound to his foot. *Id*.

At around 11:50 p.m. that same evening, Wilmington Police Officers Matthew Derbyshire and David Prado spotted three black males running a few blocks away. *Id*.; A-267; A-170-171; A-183. As they approached to question the men, two of them jumped over a six-foot high brick wall and ran away. A-82-83; A-267; A-171; A-183. Officer Derbyshire then got on the radio and put out a description of those two suspects as "two black males . . . one wearing a grey sweatshirt, dark pants, and the other [wearing] dark clothes as well . . . ." A-171; *see also* A-200-201. The third man, Akeem Coleman, was stopped and a black 9mm handgun was retrieved from the sidewalk near where Coleman was taken into custody. A-83. The shell casings found near the victim's car were later shown to have been fired by that gun. A-83.

After Coleman was taken into custody, Officer Prado climbed over the wall over which he had seen the other two suspects flee. A-267; A-184-185. Approximately 5 to 10 minutes later and just a few blocks away, Prado saw two men walking towards an apartment complex. A-83; A-185. One of the men was bare-chested and both of them were sweating. A-83; A-268; A-185. Believing it odd that they were sweating and were not wearing coats in the 40 degree weather, Prado stopped the two men. A-83; A-185. Prado placed his hands on the suspects' chests and determined that both of them had accelerated heart rates, which was consistent with their having recently been exerting themselves physically to flee from the police. A-185; A-268. The two suspects were identified as

5

Mustafa Whitfield and Emmanuel Robinson and were taken into custody. A-83; A-268; A-185. A white t-shirt found near the victim's car was later determined to contain DNA that matched that of Robinson. A-83.

Detective Stephen Misetic conducted a preliminary interview of the victim at Christiana Hospital on October 15, 2002 at approximately 2:30 a.m. A-263 ¶ 4; A-273. This interview was not recorded, but was memorialized in Detective Misetic's handwritten notes. *Id.* During this interview, the victim described the two suspects other than the shooter as "wearing matching dark clothing, possibly a dark gray shirt" with white scarves or t-shirts around their faces covering everything except for their eyes. *Id.*; A-299.

Following his interview of the victim at the hospital, Detective Misetic prepared and submitted an affidavit in support of a warrant to arrest the Plaintiff. A-263 ¶ 5; A-280; A-308-309. The warrant affidavit described all three of the suspects as black males. A-308 ¶ 3. It further described Suspect #1 as wearing a white t-shirt and dark pants, Suspect #2 as wearing a dark grey shirt or sweatshirt and dark pants, and Suspect #3 as wearing all dark clothing. *Id.*; A-309 ¶10. According to the warrant affidavit, Suspects 2 and 3 "were donning white in color masks, possibly t-shirts, which covered their entire face, but their eyes." A-309 ¶ 10. The warrant affidavit indicated that the "two subjects who had a white in color object covering their faces were positevely [sic] identified as Mustafa Whitfield BMN-17 D.O.B. of 5-10-1985 and Emmanuel Robinson BMN-17 D.O.B. of 3-12-1985." A-309 ¶ 14. Detective Misetic maintains that he obtained this information from Officer Prado, who orally informed Misetic that, when he stopped Whitfield and Robinson, he was able to identify them as the suspects he had previously seen fleeing over a wall. A-263 ¶ 6. The warrant affidavit also notes that Whitfield was wearing a white t-shirt under a grey sweater when he

was stopped. A-309 ¶ 15. Additionally, the affidavit mentions that a white in color t-shirt was located at the scene of the crime. A-308 ¶ 8.

After a warrant for Whitfield's arrest was issued, Detective Misetic conducted a formal interview of the victim on October 18, 2002. A-264 ¶ 8; A-273; A-279-80. This interview was recorded by both audio and video tapes, and was subsequently transcribed. A-264 ¶ 8; A-273. It was during this October 18, 2002 interview that the victim described the two suspects other than the shooter as looking like twins and wearing matching gray or dark black or charcoal outfits that had some similarity to what the military might wear. A-264 ¶ 8; A-316-17. The statement of the victim quoted in Plaintiff's Complaint in this action is taken from the transcript of this interview. *Id*.

Plaintiff's Complaint in this action (the "Complaint") asserts claims pursuant to 42 *U.S.C.* § 1983 against the Wilmington Police Department ("WPD") and the Delaware Attorney General's Office. A-1-5; A-8. This Court dismissed the claims against the Attorney General's Office *sua sponte* on November 16, 2006. A-9-15. In his claims against WPD, Plaintiff asserts that Detective Misetic made misrepresentations and omissions in the affidavit supporting his application for an arrest warrant. A-2-3. In the absence of these alleged misrepresentations and omissions, Plaintiff contends that there would not have been probable cause to arrest him or charge him with a crime. *See id.* Plaintiff alleges that the warrant affidavit falsely states that Wilmington police officers "positively identified" him as one of the suspects. A-2. He also claims that Detective Misetic "changed" the victim's description of the suspects to match what Plaintiff had on at the time of his arrest, and that this allegedly inaccurate description was included in the warrant affidavit. A-2-3. Although it is unclear what particular causes of action Plaintiff is attempting to allege pursuant to § 1983, it appears that the Complaint may be attempting to allege claims for false arrest, false

7

imprisonment, malicious prosecution and/or abuse of process against WPD.  A-1-5.

## ARGUMENT

### I.      Standard of Review

A Complaint must be dismissed pursuant to *Fed.R.Civ.P.* 12(b)(6) for failure to state a claim upon which relief can be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Adkins v. Rumsfeld*, 450 F.Supp.2d 440, 444 (D. Del. 2006)(quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957)). The court must construe handwritten *pro se* complaints liberally and must hold them to less stringent standards than formal pleadings drafted by lawyers. *Smith v. Ostrum*, 2000 U.S. Dist. LEXIS 10115, at *6 (D. Del.).  However, the court may dismiss such complaints for failure to state a claim if it appears "beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  When considering a motion to dismiss, the court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. *Adkins*, 450 F.Supp.2d at 444.

The court generally may not consider matters outside the pleadings when adjudicating a motion to dismiss.  *Id.*  However, the court may consider documents integral to or explicitly relied upon in the complaint without converting a motion to dismiss into a motion for summary judgment. *Id.*  Accordingly, federal courts have considered the warrant application, though not attached to the pleadings, in deciding Rule 12(c) and 12(b)(6) motions to dismiss § 1983 claims alleging that the plaintiff was subjected to an unlawful search or seizure pursuant to a warrant obtained in bad faith or as a result of material misstatements or omissions in the warrant application. *See Heine v. Rice*,

8

2001 U.S. Dist. LEXIS 9840, at *2, n.2 and *18-25 (M.D. Fla. Apr. 9, 2001); *Brodeur v. City of New York*, 2002 U.S. Dist. LEXIS 4500, at *1-2, 5-7 (S.D. N.Y.). The court may also consider matters of public record, orders and items appearing in the record of the case without converting a motion to dismiss into one for summary judgment. *See Adkins*, 450 F.Supp. 2d at 444; *Smith*, 2000 U.S. Dist. LEXIS 10115, at * 5.

If, on a motion to dismiss, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." *Tawes v. Frankford Volunteer Fire Co.*, 2005 U.S. Dist. LEXIS 786, at *4 (D. Del.)(quoting *Fed.R.Civ.P.* 12(b)(6)). The Court must grant summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), *cert denied*, 484 U.S. 1066 (1988); *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 568 (3d Cir. 1986). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *See Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10, (1986). The moving party is not required to negate the non-movant's claim, but instead, is only required to point out the lack of evidence supporting the claim. *Carrigan v. State*, 957 F. Supp. 1376, 1381 (D. Del. 1997); *see also Big Apple BMW, Inc., et.al v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992).

Once the moving party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P.* 56(e). If the

9

non-moving party cannot produce "concrete evidence from which a reasonable juror could return a verdict in his favor," then summary judgment for the movants must be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of some evidence in support of the nonmoving party . . . will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." *Lamb-Bowman v. Delaware State Univ.*, 152 F.Supp.2d 553, 558 (D. Del. 2001) (citing *Anderson*, 477 U.S. at 249).

A factual issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Wayne v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). To demonstrate a genuine issue of material fact, the non-movant must provide "significant probative evidence tending to support the complaint." *See Anderson*, 477 U.S. at 249. The moving party "may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987).

## II.    Plaintiff's Claims for False Arrest, False Imprisonment and Abuse of Process Are Barred by the Applicable Statute of Limitations

The United States Supreme Court has held that the statute of limitations for personal injury actions applies to § 1983 claims. *McDowell v. Delaware State Police*, 88 F.3d 188, 190 (3d Cir. 1996)(citing *Owens v. Okure*, 488 U.S. 235, 239 (1989)); *see Riley v. Taylor*, 2006 U.S. Dist. LEXIS 78450, at * (D. Del.). In Delaware, the limitations period for a personal injury claim is two years. *McDowell*, 88 F.3d at 190; *Riley*, 2006 U.S. Dist. LEXIS 78450, at *7; 10 *Del. C.* § 8119. Claims not filed within the two year limitations period are time barred and must be dismissed. *Riley,* 2006

U.S. Dist. LEXIS 78450, at *7.

Generally, the statute of limitations begins to run at the time when the plaintiff knows or has reason to know of the injury which is the basis of the § 1983 action. *Gibson v. Superintendent of New Jersey Dep't of Law and Pub. Safety Div. of State Police*, 411 F.3d 427, 435 (3d Cir. 2005). However, in *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994), the United States Supreme Court held that this rule does not apply when a plaintiff brings a § 1983 action that, if successful, would demonstrate that the plaintiff's underlying criminal conviction or imprisonment is invalid. *See also Gibson,* 411 F.3d at 435.  In such a situation, no cause of action arises until the conviction or sentence is invalidated, and the statute of limitations does not begin to run until the time of such invalidation. *Heck*, 512 U.S. at 489; *Gibson*, 411 F.3d at 435.

It is well settled that a § 1983 claim based on malicious prosecution does not accrue until proceedings against the criminal defendant are dismissed. *Backof v. New Jersey State Police*, 2004 U.S. App. LEXIS 2418, at *7 (3d Cir.). However, the Third Circuit has held that claims for false arrest and false imprisonment accrue at the time of the arrest and are not subject to the *Heck* deferred accrual rule. *See Montgomery v. De Simone*, 159 F.3d 120, 126 and n.5 (3d Cir. 1998); *Gibson*, 411 F.3d at 435-38 and n.10.  The Third Circuit reasoned that, because a conviction and sentence may sometimes be upheld even in the absence of probable cause for the initial stop and arrest, claims for false arrest and imprisonment are not the type of claims contemplated by the court in *Heck* which necessarily implicate the validity of a conviction or sentence. *See id.*

Plaintiff filed his Complaint in this action on September 1, 2006. *See* A-8.  Plaintiff was arrested on October 16, 2002, which was more than two years before the date he filed his § 1983 Complaint. A-264 ¶ 8; A-279.  Further, Plaintiff's Complaint in this action reveals that, at the very

latest, Plaintiff knew or had reason to know of the alleged injury which forms the basis of his § 1983 claims for false arrest and imprisonment and abuse of process by early February of 2004. Plaintiff's Complaint alleges that, at Plaintiff's "trial it was revealed that there were no officers who had 'positively identified'" Plaintiff as the suspect and that Detective Misetic had changed the victim's description of the suspect to match what Plaintiff was wearing. *See* A-2. Plaintiff's criminal trial took place from January 29 through February 6, 2004. *See* A-21-22. Even assuming that Plaintiff's § 1983 claims for false arrest, false imprisonment and abuse of process accrued at the time of his trial, they are nevertheless barred by the statute of limitations because Plaintiff's criminal trial took place more than two years ago.

III.    **Plaintiff Does Not and Cannot Allege All of the Elements of a Valid § 1983 Claim for Malicious Prosecution**

The Third Circuit has held that in order to state a valid claim for malicious prosecution under § 1983, "[a]t a minimum, a plaintiff must allege (1) deprivation of liberty (or perhaps some other constitutional right separate from substantive due process), . . . (2) an absence of probable cause for initiation of the criminal proceedings, . . . and (3) termination or reversal of criminal proceedings by reason of the plaintiff's innocence." *Backof*, 2004 U.S. App. LEXIS 2418, at * 10-11. Liability for malicious prosecution will not attach if the allegedly malicious prosecution did not result in a favorable outcome for the civil rights plaintiff. *Marable v. West Pottsgrove Township*, 2006 U.S. App. LEXIS 9925, at *17 (3d Cir. 2006).

Plaintiff does not and cannot allege all of the elements of a valid claim for malicious prosecution. The Complaint fails to allege the termination or reversal of the criminal proceedings by reason of the Plaintiff's innocence. *See* A-2-5. Even if Plaintiff were permitted to amend the

12

Complaint, he could not establish this element of his claim for malicious prosecution because he was convicted on criminal charges following a jury trial, and his conviction was upheld both on direct appeal and when challenged by a state court habeas corpus petition and motion for post-conviction relief. A-22; A-39; A-50-52; A-69-70; A-78-95; A-96-98. Because Plaintiff cannot allege this essential element of his claim for malicious prosecution, that claim must be dismissed.

**IV.    The Complaint Must Be Dismissed Because Plaintiff Cannot Establish the Deprivation of Any Constitutional Right**

Even assuming as true the allegations of the Complaint, Plaintiff cannot demonstrate that he was deprived of any constitutional right. Consequently, Plaintiff cannot establish one of the essential elements of his § 1983 claims. In addition, because Plaintiff cannot establish the deprivation of an actual constitutional right, Detecive Misetic is entitled to qualified immunity.[1]  The Complaint should, therefore, be dismissed with prejudice.

Plaintiff's Complaint raises claims pursuant to 42 *U.S.C.* § 1983. A-1-5; A-8. The essential elements of a § 1983 claim are that: (1) a person acting under color of state law (2) deprived the plaintiff of rights secured by the Constitution. *See Powell v. Ridge*, 189 F.3d 387, 400 (3d Cir. 1999).

Qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Rogers v. Powell*, 120 F.3d 446, 454 (3d Cir. 1997); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). The qualified immunity

---

[1]  Detective Stephen Misetic has not been named as a defendant in this action. *See* A-1. It would be futile for the Court to dismiss the Complaint without prejudice or permit Plaintiff to amend the Complaint to allow Plaintiff to assert claims against Detective Misetic because Misetic is entitled to qualified immunity. The Complaint should, therefore, be dismissed **with** prejudice.

13

defense requires the Court to engage in a two-step analysis. First, the Court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right. Only if the plaintiff has done so should the court proceed to the second step, which requires the Court to determine whether that right was clearly established at the time of the alleged constitutional violation. *Russo*, 212 F.3d at 786. If the complaint fails to allege facts establishing the deprivation of an actual constitutional right, the plaintiff's claims must be dismissed, and there is no need to proceed to the second step of the analysis. *See Stevenson v. Taylor*, 2005 U.S. Dist. LEXIS 11239, at *1, 7-10 (D. Del. Apr. 28, 2005).

Where a search or seizure is made pursuant to a facially valid warrant supported by probable cause, a plaintiff can succeed on a § 1983 claim only if he can show: (1) that the police officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant; and (2) that such statements or omissions were material to the finding of probable cause. *See Russo*, 212 F.3d at 786-87; *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *Meyers v. Wokiewicz*, 2001 U.S. Dist. LEXIS 20448, at *7 (E.D. Pa. 2001). To determine whether false statements or omitted facts were material, the court must excise the alleged misstatements from the warrant affidavit and insert the alleged omissions, and then determine whether or not the "corrected" affidavit would still establish probable cause. *Russo*, 212 F.3d at 789; *see Sherwood*, 113 F.3d at 400; *Meyers*, 2001 U.S. Dist. LEXIS 20448, at *10.

Probable cause to arrest exists when the facts and circumstances known to the arresting officer are sufficient to warrant a reasonable person to believe that an offense has been committed by the suspect. *Knight v. Borough of Penns Grove*, 2002 U.S. App. LEXIS 22620, at *4 (3d Cir.

14

2002); *Rogers*, 120 F.3d at 453. Even if there was no actual probable cause, a police officer is entitled to qualified immunity if there was arguable probable cause to arrest. *Kingsland v. Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *Coons v. Casabella*, 284 F.3d 437, 440-41(2d Cir. 2002). Arguable probable cause exists when reasonable police officers in the same circumstances and possessing the same knowledge as the defendant could have believed there was probable cause to arrest. *Brown v. Head*, 228 F.Supp.2d 1324, 1328 (M.D. Ala. 2002); *see Coons*, 284 F.3d at 440-41.

Plaintiff cannot demonstrate that Detective Misetic's alleged misstatements and omissions were made knowingly and deliberately or with reckless disregard for the truth, or that they created a "falsehood" in applying for the warrant. Nor can Plaintiff show that the alleged misrepresentations and omissions were material to the finding of probable cause. Therefore, Plaintiff has failed to establish any constitutional violation and the Complaint must be dismissed.

Detective Misetic did not make any misrepresentations or omissions in the warrant affidavit to establish probable cause. Plaintiff asserts that the warrant affidavit falsely states that police officers "positively identified" Plaintiff as one of the suspects. A-2. However, the crime reports prepared by Officers Prado and Derbyshire and Officer Prado's trial testimony reveal that Wilmington police officers actually did identify Plaintiff as one of the two suspects who were seen fleeing over a fence. It can be inferred from Officer Derbyshire's report that police officers positively identified Plaintiff as one of the suspects because that report states that "assisting units located suspect-2 (Whitfield, Mustafa DOB 5/10/85) and suspect-3 (Robinson, Emmanuel DOB 3/12/85) as they were walking in the 200 blk. of W. 4th St." A-137. Likewise, it can be inferred from Officer Prado's supplemental report that Prado was able to identify Plaintiff as one of the two suspects seen fleeing over a fence. *See* A-139. Prado's report states in relevant part:

15

This writer went on foot to locate the other two males we observed running with Coleman, who jumped over the St. Peters Cathedral wall, into their courtyard out of sight. This writer jumped over the same wall on the East side of the 500 block of West St. This officer walk[ed] throughout the courtyard looking for any evidence which may have been left behind by the other running suspects. This writer did not find any evidence in the courtyard. This writer then jumped over the wall which is closest to the church on the 300 block of W. 6th St., I then walked East bound on W. 6th St. Then South bound on Tatnall St. As this writer reached 5th and Tatnall I observed two black males walking East bound on 5th St. Both subjects did not see this writer, theythen [sic] both entered the apartment complex located in the 200 block of 4th and 5th St. This writer with officer Draper stopped both suspects inside of [t]he court complex. It should be known, that both suspects were sweating with their hearts were racing. Suspect (Emmanuel Robinson) was bare chested and had been carrying his shirts. It should be known, that the weather was approximately 40 degrees this night. Both suspects Emmanuel Robinson and Mustafa Whitfield were taken into custody and taken to Central for questioning. A-139.

In addition, Officer Prado's trial testimony reveals that when he stopped Plaintiff and Emmanuel Robinson, he actually did identify them as the suspects he had previously seen jump over the fence. Prado testified at trial that five to ten minutes after seeing two of the suspects flee over a brick wall, he climbed over that wall. Just a few blocks away, Prado saw two men walking towards an apartment complex on the corner of Fifth and Tatnall Streets. Prado was able to identify those two men at trial as Emmanuel Robinson and Mustafa Whitfield. Prado testified that one of these individuals was bare chested and both of them were sweating. This immediately aroused Prado's suspicion because it was only around 40 degrees that night. Believing that they were the two suspects who had fled over the wall, Prado stopped the two men. Prado then placed his hand on the suspects' chests and determined that both of them had accelerated heart rates, which was consistent with their having recently been engaged in a foot pursuit, running away from the police. A-183-185. Although Officers Prado and Derbyshire did not explicitly state in their reports or trial testimony that Plaintiff was "positively identified" as one of the suspects, this fact was clearly implied. Moreover, Detective

16

Misetic has indicated that before he prepared the warrant affidavit, Officer Prado orally informed him that he had identified Plaintiff as one of the suspects.   A-263 ¶ 6.

At most, it could be alleged that Detective Misetic may have made a poor word choice by using "positively" to describe the identification of Plaintiff as one of the perpetrators and omitting inculpatory facts explaining how Prado was able to identify Plaintiff as one of the suspects.   These alleged misstatements and omissions may be considered merely negligent at worst, and can hardly be characterized as reckless, knowing or deliberate.   Nor did they create a falsehood in applying for the warrant because Officer Prado clearly did identify Plaintiff as one of the suspects.

Furthermore, these alleged misrepresentations and omissions clearly were not material to the finding of probable cause.   Even if the word "positively" is omitted from the warrant affidavit and the facts explaining how Officer Prado was able to identify Plaintiff as one of the suspects are included, the affidavit is still sufficient to establish probable cause.   *See* A-308-309.

Plaintiff also asserts that Detective Misetic "changed" the victim's description of the suspects to match what Plaintiff was wearing at the time of his arrest, and that this allegedly inaccurate description was included in the warrant affidavit to establish probable cause.   A-2-3.   The warrant affidavit describes all three of the suspects as black males.   A-308 ¶ 3.   It further describes suspect #2 as wearing a dark grey shirt or sweatshirt and dark pants, and suspect # 3 as wearing all dark clothing.   *Id*.; A-309 ¶ 10.   According to the warrant affidavit, both of these suspects were donning white in color masks, possibly t-shirts, which covered their entire faces except for their eyes.   A-309 ¶ 10.

The description of the suspects included in the warrant affidavit was not false or inaccurate. Nowhere does the warrant affidavit expressly state that this description of the suspects was given by

17

the victim.  A-308-309.  In both his trial testimony and the criminal report he prepared, Officer Derbyshire described the two suspects he saw jump over the fence as black males, one of whom was wearing a dark grey sweatshirt and dark pants, and the other of whom was also wearing dark clothing. A-137; A-171; A-179; *see also* A-200-201.  This is identical to the description of the suspects included in the warrant affidavit.  A-308 ¶ 3; A-309 ¶ 10.

In his Complaint, Plaintiff quotes from a transcribed statement in which the victim described two of the suspects as having white t-shirts over their faces and wearing matching outfits that were grey, dark black or charcoal and had some similarity to what the military might wear. A-2-3.  Plaintiff asserts that Detective Misetic omitted this description given by the victim from the warrant affidavit and instead, included a different description that matched what Plaintiff was wearing at the time of his arrest.  *Id*.  What Plaintiff fails to acknowledge is that Detective Misetic could not have included in the warrant affidavit the description of the suspects reflected in the victim's transcribed statement because that interview of the victim did not take place until several days after the warrant was issued. A-263 ¶ 5; A-264 ¶ 8; A-273; A-279-80; A-308-309.  The description of the suspect included in the warrant affidavit was consistent with a description given by the victim during an informal interview at Christiana Hospital on October 15, 2002.  A-263 ¶ 4; A-273.  That interview was not recorded or transcribed, but was memorialized in Detective Misetic's handwritten notes.  *Id*.  During that interview, the victim described the shooter as wearing dark pants and a white t-shirt and described the other two suspects as wearing "matching dark clothing, possibly a dark gray shirt with white scarves around their faces covering everything except their eyes."  *Id*.; A-299  This description is consistent with the one included in the warrant affidavit, which stated that suspect #2 was wearing a dark gray shirt, suspect #3 was wearing all dark clothing, and both were covering their faces with

18

white masks or t-shirts. A-308 ¶ 3; A-309 ¶ 10. The victim's transcribed statement which is quoted in Plaintiff's Complaint was not given until October 18, 2002, which was several days after Detective Misetic prepared the warrant affidavit on October 15, 2002. A-263 ¶ 5; A-264 ¶ 8; A-280; A-308-309; A-316-317. Therefore, the description of the suspects contained in that statement could not have been included in the warrant affidavit.

The description of the suspects included in the warrant affidavit is also consistent with the victim's trial testimony. In his trial testimony, the victim described all three suspects as black males. A-157; A-159. At trial, the victim could not recall the description of the suspects he gave to Detective Misetic while at the hospital. A-169. The victim testified that he was not really paying attention to colors at the time of the incident, and other trial testimony revealed that the crime scene was dimly lit, making it difficult to perceive the difference between various dark colors. A-169-170; A-176; A-184. However, Plaintiff's attorney then read from Detective Misetic's report, which stated that, while in the hospital, the victim described the two suspects other than the shooter as "wearing matching dark clothing, possibly a dark gray shirt with white scarves around their faces." A-169. The victim agreed that this must have been the description he gave to Detective Misetic at the hospital if that is what was reflected in the report. *See id.* That description of the suspects is consistent with the one included in the warrant affidavit. A-169; A-308 ¶ 3; A-309 ¶ 10.

Although Plaintiff claims that the shirt he was wearing at the time of his arrest bore a picture of Pepe Le Pieu, the victim and arresting officers did not recall seeing this image on Plaintiff's shirt at the time of his arrest. A-169-170; A-192; A-264 ¶ 7. Plaintiff may have been wearing this shirt inside-out at the time of his arrest, and may have later turned it right-side-out to reveal the image of Pepe Le Pieu after being taken into custody. It's also possible that the arresting officers did not see

19

an image of Pepe Le Pieu on one of the suspects' shirts because they only saw the suspects' backs as they were fleeing, and/or because the area near where the suspects were stopped was dimly lit. *See* A-176; A-225.

The description of the suspects included in the warrant affidavit, thus, is identical to the description given by Officer Derbyshire and is also consistent with the description given by the victim during an informal interview at the hospital on October 15, 2002. Therefore, Plaintiff cannot demonstrate any knowing, deliberate or reckless misrepresentations or omissions that created a "falsehood" in applying for the warrant.

Plaintiff also cannot establish that the alleged misrepresentations and omissions regarding the description of the suspects were material to the finding of probable cause. The description of the suspects included in the warrant affidavit is supported by the description given by Officer Derbyshire after he witnessed two of them go over the fence. A-137; A-171; A-179; A-200-201; A-308 ¶ 3; A-309 ¶ 10. So, even if the description subsequently given by the victim in his October 18, 2002 recorded interview were included in the warrant affidavit, Officer Derbyshire's description of the suspects, which matched what Plaintiff was wearing at the time of his arrest, combined with Officer Prado's identification of Plaintiff as one of the suspects he had seen fleeing over a wall, would still be sufficient to establish probable cause (or at least arguable probable cause) for the arrest. Even a single and reasonably reliable identification may be sufficient to establish probable cause despite discrepancies between the plaintiff's appearance and the description of the perpetrator. *See Yattoni v. Oakbrook Terrace*, 801 F.Supp. 140, 146 (N.D. Ill. 1992)(noting that even a single identification by a reliable witness or victim may be sufficient to supply probable cause)*; Scott v. Parr*, 2005 U.S. Dist. LEXIS 4937, at *9 (W.D. Va. 2005)(observing that it is reasonable for an officer to base his

20

belief in probable cause on a reliable identification by a witness); *Greene v. Philadelphia*, 1998 U.S. Dist. LEXIS 6594, at *20-21 (E.D. Pa. May 8, 1998)(declaring, "The principle that probable cause may be based on a single and reasonably reliable witness identification, even though the identification may be tarnished by discrepancies in the witness's description of the perpetrator is well-established").

In summary, Plaintiff cannot demonstrate any knowing, deliberate or reckless misrepresentations or omissions that created a falsehood in applying for the warrant. Nor can he show that the alleged misrepresentations and omissions were material to the finding of probable cause. Therefore, Plaintiff cannot establish any constitutional violation. Because Plaintiff cannot demonstrate that he was deprived of any constitutional right, he cannot establish an essential element of his § 1983 claims, and Detective Misetic is also entitled to qualified immunity. For these reasons, Plaintiff's Complaint must be dismissed with prejudice.

**V.    Plaintiff's Claims are Barred by *Heck v. Humphrey* Because Success on Those Claims Would Imply the Invalidity of Plaintiff's Conviction**

Plaintiff's § 1983 claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because success on those claims would demonstrate the invalidity of Plaintiff's conviction. In *Heck*, 512 U.S. at 486-87, the United States Supreme Court held that

> in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 *U.S.C.* § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court

determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

The United States Supreme Court recently extended *Heck's* holding to § 1983 claims seeking equitable relief. In *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Court held that "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." (Emphasis in original).

One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. *Heck*, 512 U.S. at 484. A judgment in favor of the plaintiff on a § 1983 malicious prosecution claim, thus, would necessarily imply the invalidity of the plaintiff's conviction or sentence. Consequently, a § 1983 malicious prosecution claim must be dismissed unless the plaintiff can demonstrate that his criminal conviction has already been invalidated. *See id.* at 484-87; *see also Marable,* 2006 U.S. App. LEXIS 9925, at *18 (holding that the plaintiff's § 1983 malicious prosecution claim was barred by *Heck* because an award of damages pursuant to that claim would have required a finding that the state proceedings had ended favorably for the plaintiff despite his conviction and sentence).

Success on a § 1983 claim for false arrest or false imprisonment does not always demonstrate the invalidity of a conviction because there are some circumstances where a conviction may be upheld even in the absence of probable cause for the initial stop and arrest. *See Montgomery*, 159 F.3d at 126 n.5. However, the Third Circuit has held that claims for false arrest and imprisonment would necessarily imply the invalidity of a conviction and are, therefore, barred by *Heck*, where success on

22

those claims would negate an essential element of the crime of which the § 1983 plaintiff was convicted. *Gibson*, 411 F.3d at 439. For example, in *Marable*, 2006 U.S. App. LEXIS 9925, at *16, 18, the Third Circuit held that the plaintiff's § 1983 claims for false arrest and false imprisonment were barred by *Heck* where an award of damages on those claims would have required a finding that the plaintiff had been unlawfully detained. The Court reasoned that such a finding would have been sharply at odds with the fact of plaintiff's conviction under 18 *Pa. C.S.A.* § 5104 for resisting arrest, because an element of that crime was that the underlying arrest was lawful. *Id.* at *18.

Courts in other Circuits have similarly held that § 1983 false arrest and false imprisonment claims were barred by *Heck* where the facts supporting both the arrest and the conviction were the same. For instance, in *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996), the plaintiff was convicted of assault with a deadly weapon for driving his truck at a sheriff and highway patrol officer. The plaintiff subsequently brought § 1983 claims for false arrest and malicious prosecution against the officers, claiming they arrested him without probable cause and conspired to bring unfounded criminal charges against him. *Id.* The Ninth Circuit concluded that the plaintiff's false arrest and malicious prosecution claims were barred by *Heck. Id.* The court reasoned that a judgment in his favor on these claims would necessarily imply the invalidity of his conviction because the facts and evidence supporting both the conviction and the arrest were the same. *See id.* The court found that the plaintiff's conviction for assault with a deadly weapon was necessarily based on the jury's finding that he had intentionally driven his vehicle at the defendant officers to harm them. *See id. See also McMillen v. Nunley*, 2003 U.S. Dist. LEXIS 16959, at *7-9 (N.D. Tex. 2003) (holding that the plaintiff's § 1983 false arrest claim was barred by *Heck* where the alleged false statements made by the defendant to secure a search warrant involved the same facts upon which the plaintiff's conviction

23

was based); *Quintana v. Gates*, 2004 U.S. Dist. LEXIS 14886, at * 26 (C.D. Cal. 2004)(holding that where the facts supporting a police officer's determination that there was probable cause to arrest the plaintiff were the same as the facts supporting the plaintiff's conviction, a finding that the officer lacked probable cause would necessarily imply the invalidity of the plaintiff's conviction).

Success on Plaintiff's false arrest and false imprisonment claims would disprove an essential element of the crimes of which Plaintiff was convicted. Plaintiff asserts that, without the alleged misrepresentations and omissions made by Detective Misetic in the warrant affidavit, there would not have been probable cause to arrest Plaintiff or charge him with any crime, because there would not have been any evidence to identify him as one of the suspects or otherwise link him to the crime. *See* A-2-3. Plaintiff's identification as one of the suspects was an essential element of the crimes of which he was convicted because the jury could not have found Plaintiff guilty beyond a reasonable doubt unless it determined that there was sufficient evidence to identify Plaintiff as one of the perpetrators. As the Delaware Supreme Court indicated in its December 13, 2005 decision affirming the denial of Plaintiff's motion for post-conviction relief, Plaintiff's identity as one of the perpetrators was established at trial, and the evidence linking him to the crime was sufficient for the jury to have found him guilty beyond a reasonable doubt. *See* A-97.

In addition, the facts supporting probable cause to arrest the Plaintiff are the same as the facts supporting his conviction. The facts set forth in the warrant affidavit which established probable cause to arrest Plaintiff are Wilmington police officers' identification of Plaintiff and Emmanuel Robinson as the two suspects who had jumped over a fence and had previously been seen running with Akeem Coleman, and the fact that Plaintiff matched the description of those two suspects. A-308-309. According to the warrant affidavit, the suspects were described as black males. A-308 ¶

24

3. Suspect #2 was wearing dark clothing and a dark grey shirt, suspect #3 was wearing dark clothing, and both of those suspects were donning white masks or white t-shirts which covered their entire faces except for their eyes. *Id.*; A-309 ¶ 10. When stopped by police officers, Plaintiff, a black male, was wearing a white t-shirt under a grey sweater. A-309 ¶ 15. The warrant affidavit further notes that a white in color t-shirt was found at the scene of the crime. A-308 ¶ 8. That t-shirt was later found to contain DNA that matched that of Emmanuel Robinson, the person who was with Plaintiff when he was stopped by the police. A-83.

These same facts formed the basis of Plaintiff's conviction. Both the victim and Officer Derbyshire testified at trial that they had an opportunity to see the suspects and that the suspects were three black males. A-171; A-159. In his trial testimony, the victim did not recall the description of the suspects that he gave to Detective Misetic while in the hospital. A-169. The victim also testified that he was not really paying attention to colors at the time of the incident. A-169-170. However, Plaintiff's attorney then read the victim the description of the suspect he gave at the hospital as reflected in Detective Misetic's report, which stated that the two suspects other than the shooter were "wearing matching dark clothing, possibly a dark gray shirt with white scarves around their faces." The victim then agreed that that must have been the description he gave while at the hospital if that is what was written in the report. *See* A-169. In addition, Officer Derbyshire testified at trial that he was able to see two of the suspects before they jumped over the fence. He then "got on the radio and put out a description" of those two suspects as "two black males . . . one wearing a gray sweatshirt, dark pants, and the other [wearing] dark clothing as well . . . ." A-171; *see also* A-200-201. Officer Prado's trial testimony reflects that when he stopped Plaintiff and Emmanuel Robinson, he did, in fact, identify them as the suspects who had jumped over the fence and had previously been seen

25

running with Akeem Coleman.  Prado testified that, after stopping Coleman, he climbed over the brick wall he had seen the other two suspects go over.  Just a few blocks away from that wall, Prado saw two individuals walking towards an apartment complex on the corner of Fifth and Tatnall Streets. Prado identified those two individuals as Emmanuel Robinson and Plaintiff Mustafa Whitfield.  Prado testified that one of those individuals was bare chested and both were sweating, even though it was only 40 degrees that night, and that immediately drew Prado's attention to the two individuals.  Prado stopped the two men, suspecting that they were the two suspects who had fled over the wall.  Prado then placed his hand on the suspects' chests and determined that both of them had accelerated heart rates, which would have been consistent with their recently having been exerting themselves physically to flee from the police.  A-185.  Whitfield was wearing a grey sweatshirt over a white t-shirt when he was stopped by the police.  A-309 ¶ 15.  The prosecution argued at trial that Whitfield matched the description of one of the suspects seen fleeing over a wall because he was wearing a grey sweatshirt and had a white t-shirt in his possession. A-225.  At trial, the prosecution also presented evidence that the white t-shirt found near the victim's car contained DNA that matched that of Robinson, who was found walking with Plaintiff when he was stopped by the police.  A-226.

This was the evidence presented at trial which established Plaintiff's identity as one of the perpetrators and linked him to the crime.  The jury's conviction of Plaintiff was clearly based on this evidence.  Because success on Plaintiff's false arrest and false imprisonment claims would disprove Plaintiff's identity as one of the perpetrators, and because Plaintiff's arrest and conviction were supported by the same facts, Plaintiff's false arrest and imprisonment claims are barred by *Heck*.

## VI.    Plaintiff's Claims Should Be Dismissed Because They Are Barred by Collateral Estoppel

In *Allen v. McCurry*, 449 U.S. 90, 95-105 (1980), the United States Supreme Court held that

26

the doctrines of *res judicata* and *collateral estoppel* require federal courts adjudicating an action under § 1983 to give issue and claim preclusion effect to state court decisions on federal constitutional issues that a § 1983 plaintiff had a full and fair opportunity to litigate in a state criminal proceeding. Under the doctrine of *collateral estoppel*, once a court has decided an issue of fact necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Id.* at 94; *Looney v. City of Wilmington*, 723 F.Supp. 1025, 1032 (D. Del. 1989). In determining the *collateral estoppel* effect of a state proceeding, a federal court must apply the law of the state where the criminal proceeding took place and must also ascertain whether the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue in state court. *Looney*, 723 F.Supp. at 1032. Delaware courts follow a four-part test in deciding whether *collateral estoppel* applies. *Id.* Collateral estoppel requires that (1) a question of fact essential to the judgment (2) was litigated (3) and determined (4) by a valid and final judgment. *Id.*

Under Delaware law, *collateral estoppel* bars both issues that were raised and issues that *could have* been raised in a prior criminal proceeding. For example, in *Brown v. State*, 721 A.2d 1263, 1264-65 (Del. 1998), the Delaware Supreme Court held that *collateral estoppel* precluded the petitioner in a civil forfeiture proceeding from relitigating illegal search and seizure claims previously raised during the course of his criminal trial in federal district court. The court noted that the district court had heard these same issues in the course of a suppression hearing concerning the evidence seized in a search of the petitioner's home. *Id.* at 1265. The court concluded that the district court's failure to address some specific issues relating to the plaintiff's illegal search and seizure claims was of no import since the petitioner had ample opportunity and motive to assert all such claims at his

27

suppression hearing. *Id.* The court noted that the petitioner was ably represented by counsel in the criminal matter and could not use the civil forfeiture proceeding as a back door attempt to assert claims that he did not address in the criminal proceeding in the first instance. *Id.* Similarly, in *Brawley v. State*, 1999 Del. LEXIS 379, at *1-2, 4, the petitioner in a civil proceeding to obtain the return of seized property argued that the search leading to the seizure of the property was unconstitutional because it was based upon a false probable cause affidavit and an invalid warrant. The Delaware Supreme Court held that *collateral estoppel* prevented the petitioner from questioning the legality of the search and seizure in the civil proceeding because the petitioner had the opportunity to raise all such issues at a suppression hearing in the prior state court criminal proceeding. *Id.* Finally, in a case applying Delaware law, this Court noted that "[c]ollateral estoppel should not be barred 'where review is available but is not sought.'" *Looney*, 723 F.Supp. at 1034 (quoting *Restatement (Second) of Judgments* § 28(1) comment a (1982)).

Plaintiff has filed a federal petition for a writ of habeas corpus in this Court which raises the same arguments as those raised in Plaintiff's § 1983 Complaint – namely that Plaintiff was arrested and charged with robbery and other criminal offenses because Detective Misetic allegedly made misrepresentations in his warrant affidavit in order to establish probable cause. *See* A-106-107, A-117-118; A-2-3. Plaintiff's § 1983 Complaint and his federal habeas corpus petition both allege that (1) Misetic falsely stated in his warrant application that two police officers had positively identified Plaintiff as the suspect and that (2) the victim's description of the suspect that Misetic included in the warrant application was inconsistent with the "real" description of the suspect given by the victim in a statement that was recorded and transcribed. *See id.* According to Plaintiff, if Misetic had not made these alleged misrepresentations, there would not have been probable cause to arrest Plaintiff or

28

charge him with a crime because there would not have been any evidence identifying him as the suspect or otherwise linking him to the crime. *See* A-2-3; A-105-109.

As Plaintiff admits in his federal petition for a writ of habeas corpus, Plaintiff previously raised these same arguments that his Fourth Amendment rights were violated in both a state petition for a writ of habeas corpus and a subsequent motion for post-conviction relief filed in the Delaware Superior Court. *See* A-106-109; A-37; A-40-43; A-68. The Superior Court denied both of these applications, and the denials were affirmed by the Delaware Supreme Court on appeal. *See* A-107-109; A-39; A-50-52; A-69-70; A-96-98.

It is evident from the Delaware Supreme Court's December 13, 2005 decision denying Plaintiff's motion for post-conviction relief that Plaintiff was given a full and fair opportunity to litigate his Fourth Amendment claims for unlawful search and seizure and arrest without probable cause, and that those issues were, in fact, decided in the state court criminal proceeding. *See* A-96-98. In its December 13, 2005 decision, the Delaware Supreme Court noted that:

> In his motion for postconviction relief, Whitfield asserted two claims entitled, respectively, 'Illegal Arrest and Detention' and 'Search and Seizure in Violation of the Fourth Amendment.' In essence, however, both claims challenge the veracity of the arresting officers' testimony and the lack of forensic evidence linking him to the crime. The Superior Court noted that Whitfield's identity as one of the perpetrators was argued vigorously at the trial. The Superior Court concluded that the circumstantial evidence that tied Whitfield to the crime was abundant and thus sufficient for the jury to find him guilty beyond a reasonable doubt.

A-97. "After careful consideration of the parties' respective positions and the record below", the Delaware Supreme Court held that the Superior Court did not err in concluding that Plaintiff's motion for post-conviction relief was without substantive merit. *Id.* The Supreme Court also found that, because the sufficiency of the evidence was challenged on direct appeal, Plaintiff's post-conviction

29

motion was barred as previously adjudicated under *Delaware Super. Ct. Crim. R.* 61(i)(4). *Id.* Although Plaintiff did not raise precisely the same specific issues relating to his Fourth Amendment claims for unlawful search and seizure and arrest and detention without probable cause in his direct appeal (*see* A-78-95), Plaintiff had a full and fair opportunity to raise those issues at that time. Plaintiff was represented by counsel in the direct appeal. *See* A-78. Further, Plaintiff admits that he became aware at the time if his criminal trial of the misrepresentations and omissions allegedly made by Detective Misetic in the warrant application. *See* A-2, Therefore, Plaintiff clearly was aware of and had an opportunity to raise those issues in his direct appeal.

Thus, the same federal constitutional issues raised in Plaintiff's § 1983 Complaint were or clearly could have been raised in Plaintiff's direct appeal from his conviction, as well as in his state court habeas corpus petition and motion for post-conviction relief. And, it is clear that those issues were, in fact, decided by the Delaware Superior and Supreme Courts. *See* A-69-70; A-78-95; A-96-98. Consequently, Plaintiff's § 1983 claims against WPD are barred by *collateral estoppel.*

## VII.  **The Complaint Fails to State a Claim Upon Which Relief Can Be Granted Because Defendant WPD Is Not a Separate Juridical Entity from the City of Wilmington and Is, Therefore, Not Subject to Suit**

Plaintiff brings this cause of action against the Wilmington Police Department. *See* A-1. However, Defendant is merely a department of the City of Wilmington and has no separate existence of its own subjecting it to suit. The Complaint, therefore, fails to state a claim upon which relief can be granted because Plaintiff cannot maintain a cause of action against the WPD, which is the only person or entity remaining as a defendant in this lawsuit. *See* A-9-15.

The capacity of an entity such as a police department to sue or be sued is "determined by the law of the state in which the district court is held." *Paredes v. City of Odessa*, 128 F. Supp. 2d 1009,

1013 (W.D. Tex. 2000) (citing *Fed. R. Civ. P.* 17(b)); *Darby v. Pasadena Police Dep't*, 939 F.2d 311,

313 (5th Cir. 1991)(dismissing Title VII suit against police department because department was not

a legal entity for purposes of a lawsuit).   In order for a plaintiff to be able to sue a municipal

department, the department must have a separate legal existence from the municipality.  *Darby*, 939

F.2d at 313.  "Unless the political entity that created the department has taken 'explicit steps to grant

the servient agency with jural authority,' the department lacks the capacity to sue or be sued."

*Paredes*, 128 F.Supp. 2d at 1013 (quoting *Darby*, 939 F.2d at 313).

Courts have cited the *Law of Municipal Corporations* as the rule on the issue of when a

department may be sued separately from the municipality.  The treatise states:

> In the discharge of a duty primarily resting upon the municipality, generally the rule
> is that a department acts as its agent although the department may have full power in
> the particular matter involved.  However, the department may be made responsible as
> a corporation, and not the city, where the charter or a legislative act may so provide.
> In that event liability for acts done or omitted by it is in its corporate capacity.  Where
> the department, for example, a fire, police, health, education, overseers of the poor,
> and the like, is a corporation, or a quasi-corporation, with functions peculiar to such
> bodies which are performed separately from the functions of the municipality, these
> bodies are responsible as corporations and may sue and be sued as such.  But if the
> board or department is not a corporate body it cannot be sued as such, e.g., a police
> board, a board of workhouse directors, a board of park commissioners, a housing
> authority, or a board of public works . . .

3 Eugene McQuillan, *The Law of Municipal Corporations* §12.40 (1990).

In *Thomas v. Wilmington Police Dep't*, 1994 Del. Super. LEXIS 266, at *4-5 ( Del. Super. Ct.

1994) the Delaware Superior Court utilized the rule set forth above to address the issue of whether

the WPD is subject to suit.  The Court found that based upon *Wilmington City Charter* Sec. 3-100,

the Wilmington Police Department is merely a department of the City of Wilmington and cannot be

sued. *See id.* at *5-6, 8.  The *Wilmington City Charter* states in pertinent part:

31

> Article III.     Executive and Administrative Branch – Organization
>> Chapter 1.     Officers, departments, boards, commissions and other agencies.
>> Sec. 3-100     Executive and administrative officers, departments, boards, commissions and agencies designated.
>> The executive and administrative work of the city shall be performed by...
>> (d)     The following departments which are hereby created: . . .
>>         Police department . . . .

(*See Wilmington City Charter*, § 3-100, A-41-42). In granting summary judgment in favor of Defendant WPD, the Court in *Thomas* concluded that § 3-100 "of the *Wilmington Charter* shows that the Wilmington Police Department 'is not a separate entity, but rather a department of the city itself.'" *See Thomas*, 1994 Del. Super. LEXIS 266, at *6 (quoting *Davis v. Wilmington Police Force at Wilmington City Hall*, C.A. No. 88-72-LON, Magistrate Robinson (Report and Recomm. Dec. 21, 1988, Adopted Jan. 18, 1989)). This same conclusion was reached in *Washington v. Wilmington Police Dep't*, 1995 Del. Super. LEXIS 472, at *9 (Del. Super. 1995) (holding that the Wilmington Police Department was not a separate juridical entity that was subject to suit).

Based upon the well-settled rule of law that unincorporated municipal departments are not separate juridical entities from the municipalities themselves, the Third Circuit has recently held that unincorporated police departments are not legal entities amenable to suit. *Padilla v. Township of Cherry Hill*, 2004 U.S. App. LEXIS 20763, at *16 (3rd Cir. Oct. 5, 2004); *accord, Thomas v. City of Philadelphia*, 2002 U.S. Dist. LEXIS 12264, at *5-6 (E.D. Pa. Feb. 7, 2002)(holding that the Philadelphia Police Department does not have a corporate existence separate from the city so as to permit suit); *see also, Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992)(dismissing suit against county sheriff's department because "sheriff's departments and police departments are not usually considered legal entities subject to suit").

This position has found significant support in other jurisdictions. Federal courts have held

32

that for purposes of civil rights statutes, a municipal police department is not subject to suit. *See,
Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1371 (4th Cir. 1989) (dismissing claim
because, inter alia, the Baltimore police department was not a "person" for purposes of § 1985);
*Crawford v. Pennsylvania*, 2003 U.S. Dist. LEXIS 16358, at *11 (M.D. Pa. Sept. 12,
2003)("Although there is no precedential ruling on point, courts are in agreement that the definition
of 'person' in section 1985 and 1986 is the same as that in section 1983); *Gaines v. Univ. of
Pennsylvania Police Dep't*, 1997 U.S. Dist. LEXIS 15460, at *8 (E.D. Pa. Oct. 6, 1997) ("police
departments are purely instrumentalities of the municipality with no separate identity"); *PBA Local
No. 38 v. The Woodbridge Police Dep't*, 832 F. Supp. 808, 825-826 (D. N.J. 1993)(collecting cases);
*Smith-Berch, Inc. v. Baltimore County*, 68 F.Supp. 2d 602, 626-627)(D. Md. 1999)(collecting cases).

Indeed, this Court has previously dismissed civil rights claims against the WPD for the
reasons set forth above. In *Brown v. Pfaff*, 2004 U.S. Dist. LEXIS 3944, at *7 (D. Del. Mar. 3, 2004),
citing several opinions from circuit and district courts, this Court concluded:

> A municipal police department . . . is not a 'person' within the meaning of Section
> 1983.  Consequently, the Wilmington Police Department is entitled to summary
> judgment as a matter of law.

There is some contrary authority in this district which Defendant respectfully urges should not
be followed.  Defendant respectfully suggests that this Court's holding in *Jamison v. Wilmington
Police Dep't*, 2004 U.S. Dist. LEXIS 22004, at *7 (D. Del. Oct. 12, 2004) that the Wilmington Police
Department was a local municipality and was, therefore, a person subject to suit under § 1983, should
not be followed in light of the Third Circuit's recent decision in *Padilla*, 2004 U.S. App. LEXIS
20763, at *16.  In *Padilla*, the Court held that unincorporated police departments are not legal entities
amenable to suit. Id. at *16. Specifically, the Third Circuit stated:

33

> Rivera's claim against the Police Department is equally unsuccessful because the Police Department cannot be sued. In section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate juridical entity. Because the Police Department is merely an arm of the Township, the summary judgment granted to the Police Department on the §1983 claim was proper. *See N.J.S.A.* 40A:14-118 (proclaiming that New Jersey police departments are "an executive and enforcement function of municipal government.")

*Id.* The Third Circuit's holding in *Padilla* is consistent with this Court's previous holding in *Brown v. Pfaff*, 2004 U.S. Dist. LEXIS 3944, at *7 (D. Del. March 3, 2004) wherein the Court stated: "A municipal police department . . . is not a 'person' within the meaning of Section 1983. "

Defendant respectfully suggests, for the following reasons, that the Court should follow its earlier holding in *Brown v. Pfaff*, rather than its holding in *Jamison*. First, *Jamison* was decided only a week after the Third Circuit's holding in *Padilla*, and consequently, *Padilla* was not brought to the attention of this Court. Second, in *Brown* the Court considered five other cases holding that a municipal police department is not a "person" for purposes of § 1983. *See* 2004 U.S. Dist. LEXIS 3944, at *7. None of those authorities was expressly considered or mentioned in *Jamison*. *See* 2004 U.S. Dist. LEXIS 22004. Third, *Jamison* cited no authority for the proposition that the "police department is a local municipality" (*see id.* at *7), and Defendant is not aware of any authorities supporting this proposition. However, there are federal authorities expressly holding that a police department is not a local municipality. *See, e.g., Reed v. Hartford Police Dep't*, 2004 U.S. Dist. LEXIS 6237, at *6 (D. Conn. Apr. 6, 2004) (dismissing §1983 action against police department and reasoning that a "municipal police department . . . is not a municipality."). Fourth, the authority cited in *Jamison* does not stand for the proposition that a police department is a "person." In *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 558 (D. N.J. 2000) the court found no

34

evidence to support the claim that the police department deprived the plaintiff of her constitutional rights and it granted summary judgment on that basis. Thus, it never reached the issue as to whether the police department was a "person."

Given the above, Plaintiff has failed to state a claim upon which relief can be granted against Defendant WPD. As the WPD is the only Defendant remaining in this action (*see* A-1; A-9-15), all of Plaintiff's claims must be dismissed.

## VIII. The Complaint Must Be Dismissed Because Plaintiff Lacks Standing to Obtain Injunctive Relief

Plaintiff's Complaint in this action does not request money damages. Rather, the only relief sought against the WPD in the Complaint is an order requiring the Department "to investigate Detective Stephen Misetic promptly" about the alleged false affidavit, and allowing Plaintiff to file internal charges against Misetic. *See* A-4-5. The relief sought, thus, appears to be an injunction compelling the WPD to perform an investigation and to allow the Plaintiff to file charges against Misetic with the Department's Office of Professional Standards.

Pursuant to Article III's case or controversy requirement, "in order to invoke the powers of a federal court, the plaintiff must 'show an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Article III limitation." *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987)(quoting *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 38 (1976)). Because the plaintiff must establish that a favorable decision will be likely to redress his injury, the form of relief sought is often critical in determining whether the plaintiff has standing under Article III. *Id.* A given plaintiff may have standing to sue for damages, yet lack standing to seek injunctive relief. *Id.* "While

35

a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, 'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . .'" *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).  In order to have standing to obtain prospective injunctive relief, a § 1983 plaintiff must "establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice.]" *Id*. (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  *See also Blanciak v. Allegheny Ludlum Corp*., 77 F.3d 690, 699 (1996)(quoting *O'Shea*, 414 U.S. at 495-96)(noting that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing present adverse effects."

Plaintiff's Complaint alleges only past exposure to allegedly illegal conduct (*see* A-1-5), and Plaintiff cannot demonstrate any real and immediate threat that he will again be the victim of the alleged constitutional violations.  Therefore, Plaintiff lacks standing to obtain injunctive relief, and his Complaint must be dismissed.

## IX.    Plaintiff's Claims Must Be Dismissed Because the Complaint Fails to Allege the Type of Conduct Required to Hold a Municipality Liable Under § 1983

Plaintiff's Complaint does not allege any negligence or other wrongful acts or omissions on the part of WPD itself.  *See* A-1-5.  Therefore, it appears that the Plaintiff is seeking to hold Defendant WPD–a municipal department–vicariously liable for its officers' alleged wrongful acts and omissions on a theory of *respondeat superior*.  In *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691, 694 (1978), the United States Supreme Court held that a municipality cannot be held vicariously liable for violations of § 1983 on a theory of *respondeat superior* for injuries inflicted solely by its employees or agents.  Rather, it is only when the execution of a municipality's

36

policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the municipality may be held responsible under § 1983. *Id.* Because Plaintiff's claims against WPD appear to be based upon a theory of *respondeat superior*, they are barred by *Monell*.

To the extent the Complaint may be read to allege WPD's failure to investigate Plaintiff's allegations and to discipline Detective Misetic, it likewise fails to state a valid § 1983 claim because it alleges neither deliberate indifference on the part of WPD nor any facts from which deliberate indifference can be inferred. The failure to train, discipline, supervise or control employees may serve as the basis for municipal liability under § 1983 only where such failure amounts to deliberate indifference. *City of Canton*, 489 U.S. at 388-89, 392 and n.7; *Jones v. City of Philadelphia*, 491 F.Supp. 284, 287 (E.D. Pa. 1980); *Meehan v. Town of Plymouth*, 167 F.3d 85, 92 (1st Cir. 1999); *La Plant v. Frazier*, 564 F.Supp.1095, 1098 (E.D. Pa. 1983)*; Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 741-42 (8th Cir. 2001). The deliberate indifference standard requires a showing that a responsible municipal policymaker (1) had contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents; and (2) communicated a message of approval to the offending subordinate. *See Montgomery*, 159 F.3d at 127; *Garcia v. County of Bucks*, 155 F.Supp.2d 259, 268 (E.D. Pa. 2001). The Complaint fails to allege deliberate indifference on the part of WPD. It also omits any allegations from which deliberate indifference can be inferred, as it does not allege that any municipal policymaker had contemporaneous knowledge of the particular incident in question or of any pattern of prior, similar incidents. *See* A-1-5. Nor does the Complaint allege any action or inaction by any municipal policymaker that could be interpreted as encouraging Detective Misetic's allegedly offensive actions. *See id*. Because Plaintiff's allegations do not

37

implicate the type of deliberate indifference required to hold a municipality liable under § 1983, the Complaint must be dismissed.

## X.    The Complaint Fails to State a Valid Claim for Abuse of Process

An abuse of process occurs when a party employs legal process against another primarily to accomplish a purpose for which it was not designed. *Marable,* 2006 U.S. App. LEXIS 9925, at *19. The elements of a claim for abuse of process are that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. *See id.* The Third Circuit has recognized that arrest constitutes a form of legal process. *Id.* at *19-20 (citing *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1037 (3d Cir. 1988)).

"There is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* (quoting *Restatement (Second) of Torts* § 682 cmt. b (1977)). "[T]here is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at *21 (quoting *Russoli v. Salisbury Twp.*, 126 F.Supp.2d 821, 858 (E.D. Pa. 2000)).

In *Marable,* 2006 U.S. App. LEXIS 9925, at *20-21, the Third Circuit affirmed the dismissal of the plaintiff's § 1983 claim for abuse of process where there was no evidence that the police officers "perverted" the legal process or sought any object beyond the plaintiff's criminal conviction. The court pointed out that the case before it was far removed from the "usual case" of abuse of process where legal process is employed for extortionate or coercive objectives. *Id.* at *20. The court found that there was no evidence that the defendant police officers, in arresting the plaintiff, had as

38

their primary purpose some objective for which the legal process of arrest was not intended.  *Id*. Nor

was there evidence of a "definite act or threat not authorized by the process, or aimed at an objective

not legitimate in the use of process."  *Id*.

   To the extent Plaintiff's Complaint can be read to assert a claim for abuse of process, that

claim must be dismissed because there is no evidence that, in preparing the warrant affidavit,

Detective Misetic sought any object beyond Plaintiff's arrest and criminal conviction.  The Complaint

alleges that Detective Misetic made the alleged misrepresentations and omissions in the warrant

application in order to "hype" up the report or to justify Plaintiff's arrest.  *See* A-2.  There is no

indication that Detective Misetic or WPD used the legal process for an extortionate purpose or had

as their primary purpose any other objective for which the legal process of arrest was not intended.

(A-1-5).

## CONCLUSION

   For the foregoing reasons, Defendant WPD respectfully requests that the Court dismiss the

Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which

relief can be granted.  In the alternative, Defendant WPD respectfully requests that the Court grant

summary judgment in its favor and dismiss the Complaint with prejudice pursuant to Rule 56.


     /s/ Andrea J. Faraone
   Andrea J. Faraone (I.D. #3831)
   City of Wilmington Law Department
   Louis L. Redding City/County Building
   800 French Street, 9th Floor
   Wilmington, Delaware 19801-3537
   (302) 576-2175
   Attorney for Defendant WPD

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MUSTAFA A. WHITFIELD,            :
                                :
                    Plaintiff,  :
                                :
            v.                  :        C.A. No. 06-541 GMS
                                :
WILMINGTON POLICE DEPARTMENT,   :
                                :
                    Defendant.  :

CERTIFICATE OF SERVICE

I, Andrea J. Faraone, Esquire, hereby certify that on this 8th day of January, 2007, I filed the

Defendant Wilmington Police Department's Opening Brief In Support of its Motion to Dismiss, or

in the Alternative for Summary Judgment with the Clerk of Court using CM/ECF which will send

notification of such filing(s) that this document is available for viewing and downloading from

CM/ECF, I also mailed via U.S. Mail, postage pre-paid one copy to the following:


Mustafa A. Whitfield
S.B.I. #317479
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977


    /s/ Andrea J. Faraone
Andrea J. Faraone, Esquire (I.D. #3831)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant